IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

---

Keol FORTUNE
A# 045-165-066

PETITIONER

V.                                          NO:.......................

Loretta E. LYNCH, U.S. Attorney General
Jeh JOHNSON, Secretary U.S. Department of Homeland Security
Christopher SHANAHAN, DFOD
Immigration and Custom Enforcement
T. CASTILLO, Director
Hudson County Correction Facility


RESPONDENT

---

## PETITION FOR WRIT OF HABEAS CORPUS


Petitioner Keol Fortune (hereinafter "Fortune" "petitioner") hereby respectfully petitions this Honorable Court for a writ of habeas corpus, in the United States District Court District of New York, Southern District pursuant to 28 USC 2241 respectfully shows that Fortune, who has been in the custody of respondents since October 8, 2014, is subject to restraint, arrest and detention by Respondents. Fortune asserts that his restraint, arrest and detention is illegal, against the Constitution of the United States of America, and abuse of administrative discretion, as more particularly alleged below.

Fortune brings this actions to compel respondents to either release him or hold an individualized bond hearing pursuant to 8 USC 1226(a) where the Executive Office of Immigration Review will consider whether conditions may be placed upon Fortune's release that will reasonably ensure that he will pose no danger to the community and will not pose a risk of flight. If such conditions are found to exist, Fortune shall be released

1

from custody.

## I  DECISION CHALLENGED IN THIS PETITION

1) Mr. Fortune is challenging the decision of the respondent Department of Homeland Security and the Attorney General that he as a non-citizen criminal is subject to non-reviewable mandatory detention pursuant to 8 USC 1226(c)(1)(B) pending his deportation hearing and therefore denied him a bond hearing.

2) The respondents basis of the removal/deportation of Fortune is Immigration and Nationality Act 237(a)(2)(A)(iii) (Hereinafter INA) [8 USCS § 1227(a)(2)(A)(iii)], in that Fortune is a criminal non-citizen based on his one conviction, for a crime of aggravated felony. (*See* Ext A.)

3) The respondent rational for the denial off a bond hearing is that pursuant to 8 USA 1226(c) (1) (B) since Fortune is a criminal non-citizen, the attorney general may take him into custody at any time, keep him in custody pending the deportation determination, and that pursuant to 8 USC 1226(c) the EOIR and other courts do not have jurisdiction review of the attorney general's custody determination.

## II  ARGUMENT PRESENTED

4) First of all, the respondents erroneously applied 8 USC 1226(c) in that 8 USC 1226(c) only authorizes the attorney general to take in to custody a non-citizen criminal when **"the alien is released, without regard to whether the alien is released on parole, supervised release, or probation"**….., (Emphasis added) This timeliness requirement was completely ignored by the respondents.

5) It is not factually in dispute that the petitioner was taken into custody by the Attorney General not from custody pursuant to 8 U.S.C. 1226(c), but from the New York State Probation Department Office on October 8, 2014. In fact respondents took the petitioner into custody almost two years after he had been sentenced on his

criminal conviction to five years' probation and a $375 surcharge. (*See* Ext B.)

6) During those two years, the petitioner was fully rehabilitated. He has been gainfully employed, started a family with his fiancée and his young son, obtained stable employment as a merchandiser for Duane Reade, and has never had any other arrests or contacts with law enforcement.

7) Secondly, Petitioner has never served a custodial sentence after his conviction in 2013, and therefore, 8 USC 1226(c) does not apply.

8) Essentially, 8 USC 1226(c) cannot apply to the petitioner because he was never in custody to be released and since he was never release he could not be picked up by the respondent upon his release.

9) Lastly, the no review provision of 8 USC 1226(c) violates the constitutions' due process clause.

## III    JURISDICTION AND VENUE

11) Jurisdiction for purpose of a writ of habeas corpus is conferred by the provisions of Section 243(c) of the Immigration Act. 8 U.S.C. § 1252(c) which permits an alien detained by the Immigration Service to seek review by habeas corpus.

12) When Mr. Fortune is to appear before an Immigration Judge, he is bought while in custody to 201 Varick Street New York, New York located in the Southern District of New York and detained there for the duration of his hearing. Petitioner was bought into the Southern District while in the respondent's custody on July 14, 2015 to appear before the Honorable Videla.

13) The petitioner herein applies for the court to excuse the exhaustion requirement on grounds that the agency has predetermined the issue before it and that the petitioner would remain in custody.

## IV. THE PARTIES

14) Petitioner is a native and citizen of the Trinidad and Tobago. He was born in the Trinidad and Tobago on July 01, 1988. He was admitted to the United States as a Legal Permanent Resident on August 1, 1996.

15) He is currently being detained by the respondents without a bond hearing alternately at the Hudson County Correction Facility in New Jersey 07032 and 201 Varick Street New York, NY. His prisoner number is 287183.

16) Respondent United States Department of Homeland Security (Hereinafter "DHS") is the Federal agency that is detaining the petitioner and tasked with commencing removal proceeding against criminal non-citizens and determining whether to detain the criminal non-citizens pending the deportation determination. Their principal office is U.S. Department of Homeland Security Washington, DC 20528.

17) Lorreta E. Lynch is named solely in her official capacity as the Attorney General of the United States of American. The attorney General's role is in enforcing the laws of the United States which led to the petitioner's detention without bond. Her principal place of business is 950 Pennsylvania Avenue, NW Washington, DC 20530-0001.

18) Respondent Jeh Johnson is the Secretary of DHS and is named solely in his capacity as the Secretary of DHS. His principal pace of business is U.S. department of Homeland Security Washington, DC 20528.

19) Christopher Shanahan is named solely in his official capacity as New York Field Office Director for U.S. Immigration and Custom Enforcement. It is the New York Field Office of ICE which is illegally detaining the petitioner. His principal office is located at 26 Federal Plaza, Room 1105 New York, NY 10278.

20) T. Castillo is named solely in her capacity as the director of the Hudson County Department of Correction. She is the warden of the facility where the petitioner is detained. Her principal office is at 30-35 South Hackensack Avenue Kearny, NJ

4

07032.

## V.  CRIMINAL CONVICTION

23)  In 2012 Mr. Fortune was arrested and charged with Criminal Sale of a Controlled Substance in the Third Degree (P.L. §.220.39(1)), Criminal Possession of a Controlled Substance in the Third Degree (P.L. § 220.16(1), and Criminal Using Drug Paraphernalia in the Third Degree (P.L. § 220.50(2)).

24)  The indictment specifically charged that Fortune acted in concert with a separately charged defendant to sell three twists of crack-cocaine in exchange for United States currency. Fortune was not arrested at the scene of the crime with any drug or drug paraphernalia in his possession. He was arrested at a later date and at a later time on a complaint of a police officer who stated that he recognized Fortune as one who had fled the crime scene.

25)  On May 6, 2013, Fortune pled guilty to Criminal Sale of a Controlled Substance in the Third Degree under the advice of his attorney. (*See* Ext. B)

26)  Mr. Fortune was sentenced to five years probation.

## VI.  PROCEDURAL HISTORY

27)  On or about October 8, 2014 the respondents went to the New York State Probation Department Office took Fortune into custody, served him with a Notice to Appear which provided that the respondent alleged that petitioner was removal/deportable because his conviction in 2013 was a crime of aggravated felony. The respondent refused to release the petitioner, and instead detained him and scheduled his initial appearance before the Hon Videla.

28)  Fortune was denied a bond hearing.

29)  The initial hearing before Executive Office of Immigration Review (hereinafter "EOIR") Judge Videla was on or about October 2014.

30) At that time, Judge Videla determined that the custody of petitioner was pursuant to INA 236(c) and therefore he did not have jurisdiction to grant a bond hearing.

## VII  LEGAL ARGUMENTS

31) The continued detention of a lawful permanent resident who is challenging the removal from the United States for an old drug charge violated due process.

32) A recent decision by District Judge John Koeltl of the United States District Court for the Southern District of New York indicates that continued detention of a lawful permanent resident, like Mr. Fortune, who is challenging his removal from the United States violated due process. See *Gordon v. Shanahan*, 15-cv-261 (New York). In that case, Judge Koeltl said Justice Anthony Kennedy in a concurrence "identified an important limitation on the scope of the court's holding" –that an immigrant would be entitled to a bond hearing "if the continued detention became unreasonable or unjustified."

Judge Koeltl said that, in the aftermath of *Demore* and *Zadvydas*, courts have used two different tests to measure the reasonableness of detention –one that holds that's anything over six months requires a bond hearing and a second that makes a "fact-based inquiry" into whether detention is excessive. Regardless of the test, he said Gordon's continued detention with a hearing is unconstitutional. "The government has made no showing that Mr. Gordon's continued mandatory detention is reasonable," he said. Gordon, has been detained for more than eight months, well in excess or the usual time. Citing *Demore*, the judge said removal proceedings are completed on an average of 47 days and, where the immigrant appeals, the appeals take an average of four months.

The judge also said the initial delay of six months until Mulligan ruled was not Gordon's fault, "nor is there any evidence that Mr. Gordon's removal proceedings will end soon." "Moreover, it would be unreasonable to penalize Mr. Gordon for exercising his right to challenge removal by requiring him to be detained while he exercises that right, even though such detention is unnecessary to further the purpose of detention –namely preventing danger to the community and risk of flight, " he said.

Finally, the judge said "Gordon has every incentive to challenge his removability, which he cannot do if he flees." Koeltl order that Gordon be released unless he is provided with a bond hearing.

33) Here in this case, Just like Gordon's, Mr. Fortune has established that he has been detained for more than six unencumbered months. He has also provided evidence, that he should not be penalize because he is exercising his right to challenge removal by requiring him to be detained while he exercise that right. In addition, Congress did not intend the mandatory detention provision of § 1226(c) to apply to individuals plucked out of the communities they have reintegrated into, and that t the continued detention of Fortune without an individualized hearing to determine whether he is a flight risk or a danger to the community is inconsistent with the United States Constitution. Accordingly, this Court must holds that Mr. Fortune is entitled to release unless he is provided with an individual bond hearing. *See Araujo-Cortes v Shanahan*, 14-cv-4231 (New York)

## VII     RELIEF REQUESTED

The petitioner herein requests that this court grant his application for an order releasing him from immigration detention or for an order granting a bond hearing

pursuant to 8 USC 1226(a) before the Hon. Videla at the Executive Office of Immigration Review.

## IX **CONCLUSION**

For the foregoing reasons, this Court should grant Fortune's Federal writ of Habeas Corpus, order his release unless he is given an individualized bond hearing pursuant to 8 C.F.R §§1003.19 and 1236.1.

Date: October 6, 2015
Kearny, New Jersey 07032

Respectfully submitted,

Keol Fortune, pro se
A# 045-165-066
Hudson County Correctional Facility
30-35 S. Hackensack Avenue
Kearny, NJ 07032
JMR

# INDEX

**EXHIBITS**

A            Immigration Notice to Appear

B            Petitioner's Pending Motion To Vacate

# EXHIBIT A

# Notice to Appear

**In removal proceedings under section 240 of the Immigration and Nationality Act:**

Subject ID: 350283661

DOB: 07/01/1988

File No: 045 165 066

Event No: BUF1406000073

In the Matter of:

Respondent: KEOL DALE FORTUNE _____ currently residing at:

145 Albany Ave brooklyn,NEW YORK, 11213

(Number, street, city and ZIP code)        (Area code and phone number)

☐ 1. You are an arriving alien.

☐ 2. You are an alien present in the United States who has not been admitted or paroled.

☒ 3. You have been admitted to the United States, but are removable for the reasons stated below.

The Department of Homeland Security alleges that you:

1. You are not a citizen or national of the United States;

2. You are a native of TRINIDAD AND TOBAGO and a citizen of TRINIDAD AND TOBAGO;

3. You were admitted to the United States at New York, New York on or about August 1, 1996 as a Legal Permanent Resident (IR2);

4. You were convicted of the crime of Criminal Sale of a Controlled Substance in the 3rd degree, to wit: Cocaine, in violation of section 220.39 sub. 01 of the New York State Penal Law pursuant to a judgement entered on the 24th of June 2013 in the Supreme Court of the State of New York, County of New York under case number 03243N-2012.

On the basis of the foregoing, it is charged that you are subject to removal from the United States pursuant to the following provision(s) of law:

See Continuation Page Made a Part Hereof

☐ This notice is being issued after an asylum officer has found that the respondent has demonstrated a credible fear of persecution or torture.

☐ Section 235(b)(1) order was vacated pursuant to: ☐8CFR 208.30(f)(2) ☐8CFR 235.3(b)(5)(iv)

YOU ARE ORDERED to appear before an immigration judge of the United States Department of Justice at:

201 Varick Street ROOM 1140 NEW YORK NY 10014  EOIR SPC New York NY

(Complete Address of Immigration Court, including Room Number, if any)

on **To be set.**       at **To be set.**       to show why you should not be removed from the United States based on the

(Date)                 (Time)

charge(s) set forth above.        D 0522 MCLEAN           SDDO

(Signature and Title of Issuing Officer)

Date: June 20, 2014          Buffalo, New York

(City and State)

See reverse for important information

Form I-862 (Rev. 08/01/07)



| Alien's Name<br>KEOL DALE FORTUNE | File Number<br>045 165 066<br>Event No: BUF1406000073 | Date<br>06/20/2014 |
|---|---|---|

ON THE BASIS OF THE FOREGOING, IT IS CHARGED THAT YOU ARE SUBJECT TO REMOVAL FROM THE UNITED STATES PURSUANT TO THE FOLLOWING PROVISION(S) OF LAW:
------------------------------------------------------------------------------------
--------------------------------------------------------

Section 237(a)(2)(B)(i) of the Immigration and Nationality Act, as amended, in that, at any time after admission, you have been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in Section 102 of the Controlled Substances Act, 21 U.S.C. 802), other than a single offense involving possession for one's own use of 30 grams or less of marijuana.

Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act (Act), as amended, in that, at any time after admission, you have been convicted of an aggravated felony as defined in Section 101(a)(43)(B) of the Act, an offense relating to the illicit trafficking in a controlled substance, as described in section 102 of the Controlled Substances Act, including a drug trafficking crime, as defined in section 924(c) of Title 18, United States Code.

| Signature<br><br>D 0522 MCLEAN | Title<br><br>SDDO |
|---|---|

Form I-831 Continuation Page (Rev. 08/01/07)

# EXHIBIT B

**SUPREME COURT OF THE STATE OF NEW YORK**
**COUNTY OF NEW YORK: CRIMINAL TERM: PART 23**

------------------------------------------------

THE PEOPLE OF THE STATE OF NEW YORK

              -Against-

KEOL FORTUNE

              Defendant.

------------------------------------------------

**NOTICE OF MOTION**
**TO VACATE JUDEMENT**
**PURSUANT TO CPL 440.10**

Docket No. 0324N/2010

      PLEASE TAKE NOTE that upon the affidavit of Keol Fortune and the exhibits thereto, the annexed memorandum of law, and all prior proceedings had herein, the undersigned will move this Court, Supreme Court of the State of New York-County of New York: Criminal Term: Part, 100 Center Street, New York, NY 10013 on the 1st day of October, 2015, at the opening of the Court on that day, or as soon thereafter as counsel can be heard, for an order pursuant to C.P.L. §440.10(a)(h) vacating the conviction and granting such order and further relief as this Court may deem just and proper.

Dated: September 24, 2015
      Kearny, New Jersey

                                 Respectfully,

                                 Keol Fortune, Pro Se
                                 # A 045-165-066
                    Hudson County Correctional Facility
                      30-35 S. Hackensack Avenue
                          Kearny, NJ 07032

**TO: MOTION CLERK**
**Supreme Court**
**100 Center Street**
**New York, NY 10013**

**HON CYRUS R. VANCE, ESQ**
**District Attorney-New York County**
**1 Hogan Place**
**New York, NY 10013**

CRIMIMAL COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK-CRIMINAL TERM

---

PEOPLE OF THE STATE OF NEW YORK

|  | AFFIDAVIT IN SUPPORT MOTION TO VACATE PURSUANT TO CPL 440.10 |
|---|---|

        -against-

Ind. #. 03243N-2012

KEOL FORTUNE

          Defendant

---

State of New York  )
County of Kearny   ) ss.:

Keol Fortune being duly sworn, deposes and says:

1.    I am the defendant in the above-captioned matter, and I am making this affidavit in support of a motion, pursuant to section 440.10, to vacate the judgment of conviction herein, upon the ground that my attorney did not give me accurate advice on the immigration consequences of my guilty plea, and I was denied the effective assistance of counsel.

2.    When I pled guilty to Criminal Sale of a Controlled Substance in the Third Degree, under P.L. § 220.39, on May 6, 2013, I had no idea that this could cause me to be deported.

3. My attorney, Paul Brenner, did not discuss with me anything about the immigration consequences of a conviction for Criminal Sale of a Controlled Substance in the Third, under P.L. § 220.29.

4.    After I pled guilty on May 6, 2013, I was sentenced to five years probation and a $375 surcharge (*See* Ext D.)

5.   Had I know that Criminal Sale of a Controlled Substance in the Third Degree was a deportable offense and that by pleading guilty to it I would be subject to deportation, I would not have accepted that plea. I would have asked my attorney to negotiate a plea bargain with no immigration consequences. Such as Criminal Possession of a controlled Substance in the Third Degree. If he were unsuccessful in doing so, I would have insisted on going on trial and taking the risk of going to jail for a longer period.

6.   I was born on July 01, 1988 in Trinidad and Tobago.

7.   I came to the United States on August 1, 1996 as a Legal Permanent Resident. ( *See* Exh. B) I have lived in New York since I arrived in 1996.

8.   I have extensive connections to this country. My entire family lives in New York, My mother, sisters are all United States Citizens. My son who is now ages 4 was born in New York and is a United States citizens. I have also made many friends here. In this country, I have the opportunity to find work and take care of my son who is my heart. I have no family or friends in Trinidad. I have no job prospects in Trinidad, and there is not one there to support me if I have trouble finding work. I have spent nearly all my life in the United States, and it is too late to start over somewhere else.

9.   On or about September 16, 2015, I sent a letter out to Attorney Paul Brenner, but no response has been received. (*See* Exh. A)

10.   On or about July 14, 2014, I was ordered removed as a result of the May 6, 2013 plea. I am currently housed at the Hudson County Correctional Facility in Kearny, New Jersey awaiting removal.

11.   I was informed by the Immigration Court that the problem preventing me from remaining

2

in this country is the above-noted conviction. If I cannot get this plea and sentence set aside, I will not be able to remain in the United States and to be a parent to my four year old son.

12. My family had hired Audrey A. Thomas, Esq. to represent me in the immigration proceeding and to file my 440.10 motion. Unfortunately, Attorney Thomas 440.10 motion to this court had lack important information, for instance, her 440.10 motion did not contained my affidavit, etc.; as a result, this court denied the motion. Nevertheless, the prior 440.10 proceedings have revealed and confirmed that my counsel was ineffective and my conviction was obtained in violation of New York State and the Constitution of the United States of America. As my family and I is now without any further financial resources, I am filing this new motion pursuant to CPL 440.10 per se.

13. I later discovered through ADA Jill Strega Affirmation in Support of People's Response that People gave Mr. Brenner and filled with the Court a Notice of Immigration Consequences, specifically advising me that a guilty plea would subject me to a risk of adverse immigration consequences. (*See* Ext. E People Res. Page # 9) However, Attorney Brenner kept this information from me when he advised me to take the plea. In addition, this information contradict Attorney Brenner telephone conversation on March 16, 2015 with ADA Strega when he stated that he had been under the impression that I was a United States citizen, thus he did not believe he would have advised me of immigration consequence resulting of my plea. (*See* Ext. E. People Res. Page #7) Under these circumstance, Attorney Brenner's deficiency in performance prejudiced me.

14. My attorney never advised me that I had particular Constitutional rights, and I did not know about them until this problem arose. Had I known these rights, I would have exercised them.

a. I was not advised that I had a right to a *jury trial* where twelve people would have to be convinced beyond a reasonable doubt that I was guilty to be found so.

b. I was not advised that *I could remain silent and not have to testify at a trial* and the District Attorney had to prove the charge against me.

c. I was not told that I could subpoena witness *to testify for me*, with no cost to me.

15. I was never advised by my attorney about any defenses I may have had. I was not arrest at a scene of any crime. No drugs were found on me when I was arrested on July 12, 2012. The only witness that the government had to say that I was a part of any crime was that of Detective Ortiz. None of the persons who were arrested at the scene of the crime reported that I was there. No one told me that Detective Ortize statement alone was insufficient for proof beyond a reasonable doubt.

16. I was never told by my attorney that hearings could be held wherein the judge would determine if the search and arrest of me were valid. Further, my attorney never asked me about the circumstance surrounding the search and my arrest. If I had known I could have such hearing, I would have discussed the facts of the search and arrest with my attorney and would have requested any that were appropriate.

17. The only thing my attorney told me was to take the plea because it was the best he could. Because the mother of my child had died in a car accident and I wanted to be out there for my son who was one years old at the time, I accepted it and entered a guilty plea.

18. Nonetheless, if I know about the deportation risk of my guilty plea, I would not have pled guilty to the charge because (a) I would have fought the charges and gone to trial, (b) I would have held out for a better plea offer (c) I would not have taken any plea that would

4

have left my son fatherless.

19. I understand that if I am successful in having my conviction vacated, I will face charges again. I also understand that I may have to go to trial in order to avoid the immigration consequences and that if convicted, I could be sentenced to more time that I have already served. I am willing to take that charge.

20. I was denied my constitutional right to the effective assistance of counsel when attorney failed to adequately inform me of the immigration consequences of my guilty plea. I was prejudiced as I would not have relied on my lawyer's inadequate advise had I known the deportation risk.

21. Therefore, had I known of the immigration consequences of conviction of Criminal Sale of a Controlled Substance in the Third Degree, under P.L. § 220.39, I would never have pled guilty to that offense.

Keol Fortune
Pro Se
# A 045-165-066
Hudson County Correctional Facility
30-35 S. Hackensack Avenue
Kearny, NJ 07032

Docket. 03243N/2012

SUPRME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: CRIMINAL TERM: PART 23

THE PEOPLE OF THE STATE OF NEW YORK

-against-

KEOL FORTUNE

Defendant

MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
MOTION TO VACATE THE JUDGMENT PURSUANT TO
CRIMINAL PROCEDURE LAW § 440.10

Keol Fortune, Pro se
A# 045-165-066
Hudson County Correctional Facility
30-35 S. Hackensack Avenue
Kearny, NJ 07032

# I. INTRODUCTION

Defendant Keol Fortune (hereinafter "defendant") in the above-captioned matter, pro se, submits this memorandum in support of his motion to vacate his judgment of conviction. In so doing, he relies upon all proceedings and all submission had heretofore in moving this Court to vacate his judgment of conviction where trial counsel provided defendant with ineffective assistance of counsel in failing to properly advise him as to the immigration consequences of the People's proffered plea offer.

The Court should grant defendant's motion to vacate his judgment of conviction against him under N. Y. Crim. Proc. Law § 440.10 for two reasons. First, defendant's counsel withheld from him the single most important consequences of his guilty plea - removal to Trinidad and Tobago. Second, defendant was precluded from entering a voluntary and knowing plea. - The New York Court of Appeals held that a defendant, to enter a knowing and voluntary guilty plea, must be advised of consequences which are "direct," as opposed to "collateral. *People v. Ford*, 86 N. Y.2d 397, 402 (1995). - Therefore, defendant in this case is entitled to have his conviction vacated as a matter of law. In the alternative, the defendant respectfully requests that this Court conduct an evidentiary hearing as to these matters.

# II. FACT SUMMARY

Defendant is a native and citizen of Trinidad and Tobago who was admitted to the United States on or about August 1, 1996, as Legal Permanent Resident. See Affidavit of Keol Fortune ¶ 7 (hereinafter "Defendant's Aff."). On May 6, 2013, defendant, on the

1

advice of counsel, plead guilty to Criminal Sale of a Controlled Substance 3rd degree (NYPL§ 220.39-01). On June 14, 2013, defendant was sentenced by Honorable Melissa Jackson to five years probation. (*See* Exh. D) During these proceedings, defendant was not made aware of the consequence of his plea of guilty on his immigration status. See Defendant's Attachment. This conviction and sentencing trigger an automatic deportation proceedings for defendant under the United States Immigration Naturalization Act "INA" § 237(A) (2) (a) (iii). (*See* Exh. B, NTA) As a result of his guilty plea, defendant is now subject to mandatory deportation.

Defendant was represented by Ms. Paul Brenner, Esq., (Defendant's Aff. ¶ 3). However, Attorney Brenner had failed to inform defendant on the immigration consequences of his plea. Defendant's conviction for Criminal Sale of a Controlled Substance 3rd degree makes it impossible for defendant to retain his status to that of a Lawful Permanent Resident, and making him automatically deportable as an aggravated felon.  Defendant was not aware, and was not properly informed of the immigration consequences of his plea on May 6, 2013, because his attorney had failed to inform him of such. (Defendant's Aff. ¶ 3). If defendant had been properly informed of the immigration consequences of his plea on May 6, 2013, by his attorney or by the court, he would not have plead guilty to this particular charge, fought the case in trial, or sought an offer from the District Attorney to plea guilty to an offense that would not have such dramatic immigration consequences (Defendant's Aff. ¶ 18). As a result, Defendant's plea and conviction on May 6, 2013 was, therefore, obtained without him being informed of the immigration consequences. Consequently, his guilty plea was not made knowing or

voluntarily. See e.g. *Brady v. United States*, 397 U.S. 742, 748 (1970); *People v. Peque*, et AL 22 N.Y. 39 168, 192-193(2013)

To defendant, removal is a significantly more serious penalty than a criminal sentence, as his removal will create extreme hardship for him, his U.S. citizen family, and his U.S. citizen four years old son.

## III.  DISCUSSION

**DEFENDANT WAS DENIED HIS CONSTITUTION RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL WHEN HIS ATTORNEY FAILED TO ADVISE HIM OF THE IMMIGRATION CONSQUENCES OF HIS GUILTY PLEA AND FAILED TO SEEK A DISPOSTION WITH LESS HARASH IMMIGRATION CONSEQUENCES, U.S. CONST., AMENDS. V1, XIV; NY. CONST., ART. I. § 6.**

A.    <u>Preliminary Statement</u>

The United States Supreme Court had made clear that the Constitution require a defense attorney to affirmatively "inform his client whether his plea carries a risk of deportation," and also to inform his client whether the plea renders him "subject to automatic deportation." *Padilla v. Kentucky*, 130 Sup. Ct. 1473 (2010). The failure to do so, the Court held, constitutes constitutionally deficient conduct under *Strickland v. Washington*, 466 U... 668 (1984). *Id.*

B.    <u>Legal Standard</u>

"The right to the effective assistance of counsel is a basic right guaranteed by the Federal and New York State Constitution." *People v. Rojas*, 213 A.D.2d 6, 66 (1st Dep't

3

1995); U.S. Const. amend. VI, XIV; N. Y. Const. Art. I § 6. That right extends to effective assistance of counsel at the plea-bargaining stage. See *Hill v. Lockhart*, 474 U... 52, 56, (1985). Indeed, "[t]he decision whether to plea guilty or contest a criminal charge is ordinarily the most important single decision in a criminal case...[and] counsel may and must give the client the benefit of counsel's professional advice on this crucial decision." *United States v. Gordon*, 156F.3d 376, 380 (2d Cir. 1998) (internal citations omitted).

A defendant seeking to establish ineffective assistance of counsel is required to demonstrate that his attorney's actions fell below an objective standard of reasonable competence and that this failure prejudiced him. The first prong is the same under both the federal and state tests: his counsel's performance was deficient, that is, that counsel did not provide "reasonably effective assistance," *Strickland v. Washington*, 466 U... 668, 687-88 (1984), or "meaningful representation," *People v. Benevento*, 91 N. Y. 2d 708, 712 (1998).

While the articulation of the standard for deficient conduct is different under federal law and New York law, the application of those standards is the same. In fact, courts have recognized that it is only the prejudice prong in which the two tests differ, with New York applying a broader protection than federal law. See, e.g. *Eze v. Senkowski*, 321 F.3d 110, 123 (2d Cir. 2003) (noting only difference as prejudice standards, and that the test has only "modest differences"); *People v. Turner*, 5 N. Y. 3d 476, 480 (N. Y. 2005) (describing federal standard and noting that "[o]ur Ineffectiveness cases have departed from the [prejudice] prong of *Strickland*, adopting a rule somewhat more favorable for defendants. Our cases, however, agree with Strickland on the first [deficiency] prong."); *People v. Chabott*, 17 Misc. 3d 1136(a), 851 N. Y...2d 72, 2007 WL 4260145, at *3 (N. Y.

Sup. Kings Cit. Nov. 1, 2007) (Parker, J.) ("The New York state may require less from a defendant to establish ineffective assistance of counsel").

The federal and state prejudice standards are subtle different. The federal standard requires that a defendant demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U... 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* The New York standard requires a less specific showing; it focuses on "the fairness of the process as a whole rather than [any] particular impact on the outcome of the case." *Benevento*, 91 N. Y. 2d at 714. New York' test offers "greater protection" than the *Strickland* standard in the counsel's inadequacy warrants reversal "even in the absence of a reasonable probability of a different outcome" if the fairness of the proceedings has been called into question. *People v. Caban*, 5 N. Y. 3d 143, 155-56 (2005); *see also People v. Turner*, 5 N. Y. 3d 476 (2005) (noting New York prejudice standard is "somewhat more favorable to defendants" than federal prejudice standard and finding single error amounted to ineffectiveness).

The standard for determining whether counsel's conduct satisfies the first prong requires the criminal defense attorney to provide correct advice regarding the risk of deportation. In cases such as this one where "the deportation consequence is truly clear." "The duty to give correct advice is equally clear." *Padilla*, slip op. at 11-12. In *Padilla*, the Court required explicit and correct advice concerning the petitioner's deportability due to his controlled substance conviction. *Id.* The same is true here- the consequences of a Criminal Possession of Controlled substance conviction for a nonresident require the same

5

explicit and correct advice.

C.  Counsel's Failure To Advice About Immigration Consequences of a Plea of Guilt Constitutes Ineffective Assistance of Counsel.

When a defense counsel represents an immigrant in a criminal prosecution, "[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence." *INS v. St. Cyr*, 533 U.S 289, 322 (2001). In this instant case, defendant is 27 years old; he has resided in the United States since 1996.  On May 6, 20131, he pled guilty to criminal sale of a controlled substance in the third degree. He was sentenced to five years probation and $375 surcharge. (*See* Exh. D-Sentencing Minute)

Defendant was not affirmatively informed of the severe immigration consequences of his plea. Defendant's attorney on May 6, 2013, had denied him accurate information about the clear immigration consequences of his plea. (*See* Exh. C- Plea Minute) If defendant was aware of the immigration consequences, he would have not taken the plea and went to trial, or an alternative plea could have been negotiated that would have yield a sentence just as serious but without the immigration consequences of the conviction he received, such as count 2 and 3 of the indictment. (*See* Exh. E- People's Response) His counsel not only failed to warn him that the conviction would subject him to automatic deportation, but also failed to try to mitigate that "savage penalty." *Jordan v. De George, 341* U.S. 233, 243 (1951) (Jackson, J., dissenting).

Counsel's inactions deprived him of the effective assistance of counsel. U.S. Const. Amends. VI, XIV; N. Y. Const., Art. I, § 6. Under the holding of *Padilla v.*

6

*Kentucky*, 130 S.Ct. 1473 (2010), counsel's failure constituted ineffective assistance. There is little doubt that defendant's plea was unconstitutional under both the federal and New York constitutional standards; the ineffectiveness of counsel gravely prejudiced defendant, and also deprived him of the opportunity to engage in a fully knowing and voluntary plea. In addition, where an attorney failed to advise his client about the immigration consequences of a plea after 2010, said erroneous failure does fall below an objective standard of reasonableness and constitutes ineffective assistance of counsel. Therefore, defendant's plea was the result of ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 57, 102 S. Ct. 322, 370, 88 L. Ed. 2d 203, 209 (1985).

In addition, failure to advice of immigration consequences is a recurring problem in our system and different results are found in the statues and case law of different states. California's *Penal Code* Section 1016.5 states in relevant part:

"Prior to acceptance of a plea of guilty...to any offense punishable as a crime under state law,...the court shall administer the following advisement on the record to the defendant: If you are not a citizen, you are hereby advised that conviction of the offense for which you have been charged may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization..."

New York has a more limited statue, see CPL Section 220.50 sub. 7 which in pertinent part states:

"Prior to accepting a defendant's plea of guilty to a count...of an indictment or information charging a felony offense, the court **must advise...on the record** that if the defendant is not a citizen, the...plea of guilty...may result...deportation, exclusion from admission to the United States or denial of naturalization..." (Emphases added.)

This CPL section also states that failure to advise the defendant of this will not result in an invalidation of the plea or the conviction; however, **neither does it forbid that result**.

This statue gives the court some guidelines as to what is expected in our system. By

enacting it, the legislature clearly demonstrated its belief that it was proper to advise defendants of consequences for convictions which would result in immigration problems.

As to immigration problems and incompetency, since this problem is specifically referenced in a New York statute, CPL Section 220. 50 sub. 7, it cannot simple be ignored by counsel. Especially, as in defendant's case, a client should be advised about any immigration problems which may occur as a result of a guilty plea, if counsel is acting reasonable. And, although there appears to be a dearth of cases in New York on this issue, other states have ruled on it. For example, California with its statute similar to New York's ruled in *People vs. Danilo Soriano*, 194 Cal. App. 3rd 14770, 240 Cal. Rptr. 328, 65 A.L.R. 4th 705, "An alien who was served with a deportation order after he had pleaded guilty to certain crimes under terms subjection him to deportation was denied effective assistance of counsel and was entitled to withdraw his plea, where defendant received only a pro forma caution from his attorney about the deportation consequences of his guilty plea, and where whatever advice his counsel did give him was not founded on adequate investigation of federal immigration law. Because he was not adequately advised of the immigration consequences of his plea, defendant was prejudiced by the institution of deportation proceeding against him." This court also made the point that unlike defendants who contend their counsel failed to investigate witnesses or evidence relating to a possible defense, defendant here maintains his **counsel failed to investigate the law of immigration**.

D.     under *Padilla*, The Ineffectiveness of Defendant's Counsel is Clear When Counsel Failed to Inform His Client of The Immigration Consequences of His Plea

The United States Supreme Court has recently addressed the intersection of a claim of ineffective assistance of counsel and the deportation consequences of a guilty plea in *Padilla v Kentucky*. In *Padilla*, the court held that the Sixth Amendment requires counsel to "inform her client whether his plea carries a risk of deportation." 130 S.Ct. at 1486. Padilla argued that his attorney had been ineffective both in failing to advise him of the immigration consequences of his plea and in providing him with incorrect advice. The court agreed, holding that a "constitutional competent counsel would have advised him that his conviction for the drug distribution made him subject to automatic deportation."*Id* at 1478.

Prior to *Padilla*, it was well-settled in New York that deportation was a collateral consequence "peculiar to the individuals' personal circumstances and not one within control of the court system" and, accordingly, the failure by a defendant's attorney to warn the defendant of the possibility of deportation was not grounds to claim ineffective assistance of counsel *People v. Ford*, 86 NY2d 397, 403 (1995); *see also People v. Gravino*, 14 NY3d 546 (2010); *People v. Argueta*, 46 AD3d 46 (2d Dept 2007), appeal dismissed 10 NY3d 546 (2008); *People v. Cavatus*, 26 Misc 3d 1220(A) (Sup Ct, Kings County 2010); *People v. Felipe*, 15 Misc 3d 1124(A) (Sup Ct. Kings County 2007). Actual misadvise by counsel concerning immigration consequences of a plea, however, could constitute ineffective assistance of counsel. *See People v. McDonald*, 1NY 3d 109 (2003); *People v. McKenzie*, 4 AD3d 437 (2d Dept 2004); see also *United States v. Couto*, 311 Fed 179 (2d Cir 2002), cert denied 544 US 1034(2005); abrogated by *Padilla*. This landscape was altered on March 31, 2010 when the United States Supreme Court decided *Padilla*.

On March 31, 2010, the U... Supreme Court issued its decision in *Padilla v. Kentucky*, 559 U..._____, (2010), which set forth the Sixth Amendment requires defense counsel to provide affirmative, competent advice to a noncitizen defendant regarding the immigration consequences of a guilty plea, and, absent such advice, a noncitizen may raise a claim of ineffective assistance of counsel. *Padilla*, at 17. "We have long recognized that deportation is a particularly severe "penalty." *Padilla*, at 8 (quoting *Fong Yue Ting v. United States*, 149 U... 698, 740 (1892). "There can be little doubt that as a general matter, alien defendant' considering whether to enter into a plea agreement are acutely aware of the immigration consequences of their convictions." *Padilla*, supra, at 8." The Severity of deportation- "the equivalent of banishment or exile, "*Delgadillo v. Carmichael*, 332 U... 388, 390-391 (1947) only underscores how critical it is for counsel to inform her noncitizen client that he faces a risk of deportation.

In this present case, defendant's counsel had not provided him information about the single most important consequences of his guilty plea - removal to Trinidad and Tobago. The immigration law ( INA) § 237(A)(2)(a)(iii) clearly states that anyone who is convicted for criminal sale of a controlled substance would be subject to mandatory deportation and automatic deportation. On May 6, 2013, defendant pleads guilty to one count of Criminal Sale of a Controlled Substance 3rd Degree PL 220.39-01. That plea effectively prevented defendant from maintaining his status to that of a Lawful Permanent Resident, guaranteed automatic deportation, and permanently bar him from the United States if he is removed.

Pursuant to *Padilla*, defendant's attorney bore the obligation of informing him that

the plea to Criminal Sale of a Controlled Substance rendered him automatically deportable. Had defendant not taken the plea, he would have not been placed in removal proceeding, and he would have not been ordered removed from the United States. Defendant defense attorney's action does fall below an objective standard of reasonableness and constitutes ineffective assistance of counsel. *People v. McKenzie*(4 AD3d 437); *People v. McDonals*(1 NY3d 109, 115); *People v. Sanchez-Martinez*(35 AD3d 632; *People v. Grant,*(33 AD3d 935); *People v. Holder*(32 AD3d 734); *People v. Baldares-Lima*(29 AD3d 813); *People v. Hall*(16 AD3d 848)*People v. Klein,*(11 Ad3d 959); *People v. Michael,* (16 Misc 3d 84).

The law is clear, defendant's attorney bore the obligation of informing him that the plea to Criminal Sale of a Controlled Substance rendered him deportable and failure to provide such advice fall below an objective standard of reasonableness and constitutes ineffective assistance of counsel. Defendant would have not been placed in immigration removal proceeding had he not taken the plea.


## E. Defendant was Severely Prejudiced by His Counsel' Deficient Conduct

There is no question that defendant was prejudiced by his counsel's conduct, under both the federal standard and the more lenient New York standard. Defendant makes clear in his affidavit that he would not have accepted a plea that rendered him deportable (Defendant's Aff. ¶ 18). Defendant makes it positively clear that he would have either proceeded to trial or tried with his attorney to negotiate a plea that did not yield such consequences if he had known of the immigration consequences of the plea offered by the government, *Id.* Even though attorney Benner had tried to justice his action of not

informing defendant of the immigration consequences in a telephone conversation with ADA Strega, where he stated that he had been under the impression that defendant was a United States citizen, thus he did not believe he would have advised defendant of immigration consequence resulting of his plea, his action is not in compliance with the U.S. Supreme Court's *Padilla* ruling. Especially, when ADA Strega reported that Attorney Benner was served with a Notice of Immigration Consequences advising defendant that a guilty plea would subject him to a risk of adverse immigration. (See Exh. People Res. Page #9) Therefore, attorney Benner was well aware that his client was not a citizen of the United States, and has a result; defendant was prejudice by attorney Benner's action.

While the Court in *Padilla* did not address the question of prejudice directly, it did punctuate the prejudice that the conduct of defendant counsel caused here:

[I]nformed consideration of possible deportation can only benefit both the State and noncitizen defendants during the plea-bargaining process. By bringing deportation consequences into this process, the defense and prosecution may well be able to reach agreements that better satisfy the interests of both parties. As in this case, a criminal episode may provide the basis for multiple charges, of which only a subset mandate deportation following conviction. Counsel who possesses the most rudimentary understanding of the deportation consequences of a particular criminal offense may be able to plea bargain creatively with the prosecutor in order to craft a conviction and sentence that reduce the likelihood of deportation, as by avoiding a conviction for an offense that automatically triggers the removal consequences. At the same time, the threat of deportation may provide the defendant with a powerful incentive to plead guilty to an offense that does not mandate that penalty in exchange for a dismissal of a charge that does. **At 1486.**

The Supreme Court's reasoning in *Padilla* applies here a *fortiori*. *Padilla* is applicable to this case, defense counsel failure to advice the immigration consequences of a plea does fall below an objective standard of reasonableness and constitutes ineffective assistance of counsel. At the very least, defendant has made clear that deportation was such

a serious consequence that he would have held out for a different plea, or fought the charges against him if he had received the proper advice from counsel (Defendant's Aff. ¶ 18).

Defendant's claim is supported by the surrounding circumstance. He has lived in the United States for over nineteen years. He has just lost the mother of his child in a car accident, and he is the single parent of United States citizen child. He no longer has any family or connection in Trinidad and Tobago. If deported, he would be alone and without any support. Thus, there is every reason to believe that he would have proceed to trial or tried to negotiated a different plea, and his affirmation should be fully credited. At the least, the Court cannot deny the motion without granting hearing. See *People v. Otrega* 29 Misc. 3d 1203(A) at 3* (N.Y.C. Crim. Ct. N.Y.Co. 2010) (Ferrara, J.)

Additionally, had his attorney also advised the prosecutor that defendant would be mandatory deported as a result of client guilty plea, it is likely that the prosecutor would have offered him an alternate, comparable plea that would have satisfied the criminal charges and had less sever immigration consequences, such as pleading to count 2 or 3 of the indictment. Thus, attorney Benner was ineffective in his negotiations with the prosecutor, and defendant was prejudiced by it.

Under either the federal or New York constitutions, it is clear that defendant has established a claim for ineffective assistance of counsel. As a result of trial counsel's failure to advice of the immigration consequences of a plea pursuant to the *Padilla's* ruling, this Court must grant defendant's motion and vacate his conviction. *See People v. Gotte*, 508 N.Y.S. 2d 607, 125 A.D. 2d 331 (2d Dept. 1986); *People v. Comacho*, 476 N.Y.S. 2d 566,

102 A.D. 2d 728 (1st. Dept. 1984).

## F.  Defendant's Plea Was Not Knowing and Voluntary

Defendant was precluded from entering a voluntary and knowing plea due to counsel's failure to correctly advise him of the immigration consequences of his plea.  In *People v. Ford*, 86 N. Y.2d 397, 402 (1995), the New York Court of Appeals held that a defendant, to enter a knowing and voluntary guilty plea, must be advised of consequences which are "direct," as opposed to "collateral." 86 N. Y. 2d at 403, 405.  It defined a direct consequence as "one which has a definite, immediate and largely automatic effect on defendant's punishment." *Id.*   While the *Ford* Court found that "the possibility of deportation" was a collateral consequence of a defendant's conviction because it was not automatic, and because "it is a result peculiar to the individual' personal circumstances and one not within the control of the court system," *id,* that is distinguishable from the present case, where defendants automatic deportation was established on the basis of the violations alone.  The Supreme Court in *Padilla* recognized this point and directly up-ends the assumptions upon which the *Ford* case rested. The Court rejected the classification of deportation such as in the circumstance of this case as excluded for the ambit of the Constitution, emphasized its severity and close connection to the criminal process questioned the artificial between "direct" and "collateral" consequences all together, and ultimately held that the Sixth Amendment applied to require a defendant's attorney to inform him of the immigration consequences of his offense. *Padilla* at 1480-1482. In short, *Padilla* overrules *Ford Sub silentia*, and makes clear that under the framework that

14

*Ford* itself embraced a counsel must advice his client of the immigration consequences of his plea. Therefore, defendant's motion to vacate his sentence must be granted. *See People v. Gotte*, 508 N. Y.S. 2d 607, 125 A.D. 2d 331 (2d Dept. 1986); *People v. Comacho*, 476 N. Y.S. 2d 566, 102 A.D. 2d 728 (1st. Dept. 1984). Under these circumstance, defendant's plea for Criminal Sale of a Controlled Substance, Third Degree was not knowing or voluntarily.

In addition, since neither counsel nor the court informed defendant that his plea would subject him to deportation, his plea was not knowing or voluntary. See e.g. *Brady v. United states,* 397 U.S. 742, 748 (1970); *People v. Peque*, et. Al 22 NY 39 168, 192-93 (2013)

Due to the constitutional invalidity of defendant's plea, defendant respectfully request that this Court vacate the conviction and order a new trial. Specifically, § 440.10(4) recognizes that the Court may, if there are legal grounds to grant the motion, "dismiss the accusatory instrument, or order a new trial, or take such other action as is appropriate in the circumstances.

## IV.  CONCLUSION

For the reasons set forth above, defendant respectfully request that the court grant the motion and vacate the conviction, or in the alternative, order a CPL 440.10 hearing to be conduct, and granting the Defendant such other and further relief as this Court deems just, equitable and appropriate.

Date: September 23, 2015
Kearny, New Jersey 07032

Respectfully submitted,

*[signature]*

Keol Fortune, pro se
A# 045-165-066
Hudson County Correctional Facility
30-35 S. Hackensack Avenue
Kearny, NJ 07032

To:  **HON CYRUS R. VANCE, JR, ESQ**
**District Attorney-New York County**
**1 Hogan Place**
**New York, NY 10013**

**MOTION CLERK**
**Supreme Court**
**100 Center Street**
**New York, NY 10013**

# CERTIFICATE OF SERVICE

I, Keol Fortune, pro se, certified that on October 6, 2015, I caused to service on Respondents a copy of the petitioner's habeas corpus via regular mail, address to:

**T. Castillo,** Director
Hudson County Correctional Facility
30-35 S. Hackensack Avenue
Kearny, NJ 07032

**Christopher Shanahan,** FOD
ICE-New York
*Office of Detention and Removal*
**U.S. Department of Homeland Security**
26 Federal Pl, 9th Floor, Room 9-110
New York, NY 10278

I, Keol Fortune, also certify that this document was given to prison official on October 6, 2015, for forwarding to the United States District Court of the Southern District of New York. I certify under penalty of perjury that the foregoing is true and correct. 28 U.S. C. Sec. 1746.

Respectfully submitted,

Keol Fortune, pro se
A# 045-165-066
Hudson County Correctional Facility
30-35 S. Hackensack Avenue
Kearny, NJ 07032
JMR